OKLAHOMA HOSPITAL
ASSOCIATION, et al.,
Plaintiffs-Appellees,

v.

OKLAHOMA PUBLISHING COMPANY,
Defendant-Appellant.

No. 84–1171.

United States Court of Appeals,
Tenth Circuit.

Nov. 27, 1984.

Rehearing Denied Jan. 31, 1985.

Michael Minnis of Pierson, Ball & Dowd, Oklahoma City, Okl. (Jack N. Goodman and Robert Trager of Pierson, Ball & Dowd, Washington, D.C., with him on brief), for defendant-appellant.

William C. Anderson, Tulsa, Okl. (G. Michael Lewis and Leonard I. Pataki, Tulsa, Okl., with him on brief) of Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, Okl. (Michael H. Cook, Douglas J. Colton, and Debbi M. Johnstone of Wood, Lucksinger & Epstein, Washington, D.C., with him on brief), for plaintiff-appellee Oklahoma Hosp. Ass'n.

Before HOLLOWAY, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Appellant, The Oklahoma Publishing Company (OPUBCO), appeals a district court's ruling refusing to vacate protective orders entered in a civil action styled *Oklahoma Hospital Association v. Oklahoma Department of Human Services,* bearing case number CIV–83–1274–BT. We will dismiss the appeal due to OPUBCO's lack of standing.

## Background

In 1983 the Oklahoma Department of Human Services (DHS) changed the methodology by which it reimburses hospitals for inpatient hospital services provided to Medicaid beneficiaries under the Oklahoma Hospital Assistance Program. On May 10, 1984, the Oklahoma Hospital Association (OHA) brought an action against DHS challenging the new methodology and seeking an order requiring DHS to use a different reimbursement formula. OHA thereafter filed a motion for class certification; on July 5, 1983, the district court certified a plaintiff class comprised of some 120 hospitals. Noting that Eleventh Amendment concerns (prohibiting the awarding of retroactive monetary damages absent the State's waiver of its sovereign immunity) necessitated speedy resolution of the dispute, R. Vol. I at 252, the trial court set the final cutoff for discovery on September 21, 1983, with trial to commence on October 11, 1983. R. Vol. III at 702–03. In light of the expedited discovery completion date and trial date, DHS filed motions to shorten the time for OHA to respond to its interrogatories and to its request for production of documents, and to shorten the time of "reasonable notice" under Rule 30(b)(1), Fed.R. Civ.P., for the taking of depositions. R. Vol. IV at 798. Following OHA's combined response to these motions but before the trial court had ruled on them, the parties agreed upon terms for reciprocal protective orders covering documents produced during discovery. *Id.* at 840.

According to the terms of the protective orders, the party seeking production of documents would first designate which classes of documents it wished to inspect. *Id.* The opposing party then would set aside the designated documents it claimed were privileged. *Id.* If the party seeking production disputed the claim of privilege and the parties could not resolve the dispute between themselves, the dispute was to be presented to the court for an *in camera* inspection of the claimed privileged documents. *Id.* at 841. Once documents were delivered to a party, access to those documents was limited to the parties' management-level employees, counsel, auditors, and expert witnesses, who were all required to keep the contents of the documents confidential. *Id.* at 842. This confidential status was to be maintained throughout the action, except with regard to documents introduced in open court. *Id.* All documents not introduced were, upon completion of the litigation, either to be returned to the party who produced them or destroyed. *Id.* at 842–43. The district court incorporated these stipulations into two protective orders—one covering documents produced by OHA, the other covering documents produced by DHS—which it issued pursuant to Rule 26(c), Fed.R.Civ.P. *Id.* at 839, 856. According to the district court, these protective orders were necessary because: (1) the discovery encompassed hundreds of thousands of documents, many of which were subject to various claims of privilege, and (2) the parties could not otherwise review requested documents, assert claimed privileges, and then produce remaining documents in time to meet the expedited trial date. (Order No. CIV-83-1274, Western District of Oklahoma, January 27, 1984, at 2.)

Following entry of the protective orders but before trial on the merits, the parties sought court approval of a Stipulated Settlement Agreement regarding the reimbursement methodology. A hearing on the proposed agreement was scheduled for December 15, 1983. On December 12, 1983, OPUBCO, who was not a party in the case, filed a motion to vacate the protective orders and sought an order "directing the parties to allow the public (including [OPUBCO]) access to all documents produced pursuant to discovery in this litigation." R.Vol. V at 1049. OPUBCO argued that the district court abused its discretion in granting the protective orders by not balancing "the interests to be protected against the historical and constitutionally-protected interest in open-court proceedings and the specific public interest in the items protected." R. Vol. V at 1054. OPUBCO's motion was opposed by OHA, but was neither opposed nor supported by DHS. On January 27, 1984, the district court denied OPUBCO's motion and ordered the return or destruction of the documents. On February 1, 1984, the court granted OPUBCO's motion to stay execution of that order for the purposes of this appeal.

## II.

### Discussion

During oral argument of this appeal, counsel for OPUBCO was asked upon what basis OPUBCO claimed standing to challenge the district court's imposition of protective orders in the underlying suit. Because standing is "a threshold requirement which empowers a federal court to adjudicate a dispute," *Hinkson v. Pfleiderer*, 729 F.2d 697, 700 (10th Cir.1984), we cannot reach the merits of the case unless OPUBCO first demonstrates that a "case or controversy" exists between it and OHA which is proper for judicial resolution. *Glover River Organization v. U.S. Dept. of Interior*, 675 F.2d 251, 253 (10th Cir. 1982).

OPUBCO's claim of standing is predicated on its alleged First Amendment right to gather information. R. Vol. V at 1054–55. OHA did not, in the district court, contest OPUBCO's standing insofar as OPUBCO sought to vindicate its own First Amendment rights. OHA did, however, contest OPUBCO's standing insofar as it attempted to assert the constitutional rights of the parties to the underlying suit. *Id.* at 1192. The district court in its order did not discuss OPUBCO's standing, except in noting

that, as a nonparty, OPUBCO had no standing to assert the parties' First Amendment rights. (Order No. CIV–83–1274–BT, Western District of Oklahoma, January 27, 1984, at 5.)

■ The requirements for standing under Article III, Section 2, of the United States Constitution were recently clarified by the Supreme Court:

at an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putative illegal conduct of the defendant" and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." (Citations omitted.)

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), *quoted in Hinkson, supra,* 729 F.2d at 700. Beyond these "constitutional requirements," *Id.* 454 U.S. at 474, 102 S.Ct. at 759, the Court has also adhered to certain prudential principles, including the principle that a plaintiff cannot base his claim to relief on the legal rights of third parties, *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), and the principle that a plaintiff's alleged injury must "arguably" fall within "the zone of interests to be protected or regulated by the statute or Constitutional guarantee in question." *Association of Data Processing Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). *Cf. Valley Forge, supra,* 454 U.S. at 474–475, 102 S.Ct. at 759–60 (recognizing the continuing importance of prudential considerations).

■ OPUBCO, in its Motion to Appear Specially, alleged that were it not for the protective orders, the parties would be free to disseminate, and it would thereby be free to gather and publish, discovery documents not subject to those orders. This, we believe, is a sufficient allegation of injury in fact to satisfy the first requirement for standing under *Valley Forge.* Injury in fact, however, is not the sole constitutional requirement. We also must consider whether OPUBCO's alleged injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." The challenged action here is the district court's imposition of protective orders. In its Motion to Appear Specially, as noted earlier, OPUBCO moved to vacate the protective order and sought an order "directing the parties to allow the public (including [OPUBCO]) access to all documents produced pursuant to discovery in this litigation." R. Vol. V at 1049. OPUBCO's contention that it is merely seeking removal of "barriers to normal access," Reply Brief of Appellant at 16, is thus without merit. OPUBCO's alleged injury is that it was denied access to documents covered by the protective orders. We therefore must consider whether by vacating those protective orders OPUBCO will gain access to those documents.

■ While it may be conceded that parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order, *See Seattle Times Co. v. Rhinehart,* —— U.S. ——, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), it does not follow that they can be compelled to disseminate such information. The Supreme Court recognized this proposition in *Wooley v. Maynard,* 430 U.S. 705, 714, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977), when it noted "that the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *See also Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). This proposition applies with equal force notwithstanding that the parties to the underlying suit are an association and a state agency. *Consolidated Edison Co. v. Public Serv. Comm.,* 447 U.S. 530, 533, 100 S.Ct. 2326, 2330, 65 L.Ed.2d 319 (1979) ("[t]he inherent worth of the speech in terms of its capacity for informing the public does not depend

upon the identity of its source, whether corporation, association, union or individual."), *quoting First National Bank of Boston v. Bellotti*, 435 U.S. 765, 777, 98 S.Ct. 1407, 1416, 55 L.Ed.2d 707 (1978).

Consequently, assuming we were to lift the protective orders, still the parties to the underlying suit cannot be compelled, ipso facto, to disseminate documents in their possession; OPUBCO, a nonparty, can gain access to those documents only by exercising a party's right to disseminate. This it cannot do. *See Warth, supra; In Re "Agent Orange" Product Liability Litigation*, 96 F.R.D. 582, 584 (1983) (Pratt, Circuit Judge, sitting by designation). Moreover, the protective orders were imposed by the district court following the parties' agreement and stipulation to terms and conditions for production of documents. R. Vol. IV at 840. Neither OHA nor DHS objected to or appealed from the district court's imposition of those orders. In light of the fact that the parties have not chosen to assert their rights of dissemination, we view it as highly unlikely that they would do so were we simply to lift the protective orders at this time. *Cf. Agent Orange, supra*, 96 F.R.D. at 584 ("Neither plaintiffs nor defendants have appealed from the special master's protective order, and the court concludes that CBS does not have standing to assert the parties' rights where they have not chosen to assert them at this time"). Consequently, it is unlikely that OPUBCO would succeed in obtaining the redress it seeks—access to the documents—were we to lift the protective orders. We therefore conclude that OPUBCO has failed to satisfy the second constitutional requirement for standing under *Valley Forge.*

Even if we were to assume, as OPUBCO contends, that this is not an "access" case, and that mere removal of the protective order is the only redress OPUBCO seeks (thus satisfying the second *Valley Forge* constitutional requirement), we would nonetheless deny OPUBCO's standing based on the prudential concern that the interest for which it seeks redress is not within the "zone of interest to be protected or regulated by the statute or constitution-

al guarantee in question." The interest OPUBCO seeks to protect is its alleged First Amendment right to gather information. Although it is true that the Supreme Court has recognized that newsgathering does warrant some First Amendment protection, *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972), that right is not unlimited: "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965). Thus, the Supreme Court has recognized that, whatever the extent of protection warranted newsgathering, it is no greater than the right of the general public to obtain information. *Pell v. Procunier*, 417 U.S. 817, 834, 94 S.Ct. 2800, 2810, 41 L.Ed.2d 495 (1974) ("The Constitution does not ... require government to accord the press special access to information not shared by members of the public generally.") *Accord Branzburg v. Hayes, supra; Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

The Supreme Court recently stated that "pre-trial depositions and interrogatories are not public components of a civil trial." *Seattle Times, supra*, —— U.S. at ——, 104 S.Ct. at 2207. This is so, the Supreme Court recognized, because "[m]uch of the information that surfaces during pre-trial discovery may be unrelated or only tangentially related, to the underlying cause of action." *Id.* Such is the case here. The district court entered protective orders in order to expedite a discovery process involving literally hundreds of thousands of documents, many of which were subject to claims of privilege. At that stage in the litigation, those documents had not been filed with the court and certainly had not satisfied threshold tests of relevancy and admissibility. They therefore were not available to the public generally, and OPUBCO does not have standing to complain about the existence of the protective order. *Cf. Agent Orange, supra*, 96 F.R.D. at 584 ("The same factors that support access to judicial records and other

public documents ... simply are not implicated where the materials were obtained by a party through discovery but have not been filed with the court"). Having determined that OPUBCO lacks standing to challenge the district court's imposition of protective orders, it is unnecessary for us to reach the substantive contentions.

DISMISSED.