### Wade F. EXUM, M.D., Plaintiff,

v.

### UNITED STATES OLYMPIC COMMITTEE, a corporation; United States Anti–Doping Agency, a not for profit Colorado corporation, Defendants.

#### Civ.A. No. 00–RB–1421 (PAC).

United States District Court,
D. Colorado.

May 23, 2002.

for Salt Lake Tribune Publishing Co., amicus.

## ORDER

COAN, United States Magistrate Judge.

This is an employment discrimination case under 42 U.S.C. § 1981, with pendent state law tort and contract claims. Plaintiff was formerly the director of drug control administration for defendant United States Olympic Committee ("USOC"). Plaintiff alleges in his amended complaint that defendant USOC engaged in fraud and misrepresentation by representing that USOC was committed to eradicating doping among U.S. Olympic athletes and would support plaintiff's efforts to reduce or eliminate doping, but USOC instead exhibited hostility and created impediments toward plaintiff's efforts. (First Amended Compl., Fourth Claim for Relief) Plaintiff's wrongful termination claim alleges that defendant USOC charged plaintiff with complying with and implementing anti-doping policies, but then asked plaintiff to violate the policies and retaliated against him for his attempts to implement and comply with the policies. (*Id.* at Seventh Claim for Relief)

The matters before the court at this time are: (1) Defendant United States Olympic Committee's Motion for Protective Order [filed November 22, 2000]; (2) Motion of the Associated Press, CBS Broadcasting, Inc. [*et al.*] to Intervene, or, in the Alternative, to be Heard in Opposition to the Defendants' Motion for Protective Order [filed November 27, 2000]; (3) USA Today's Motion to Intervene [filed December 6, 2000]; (4) Defendant United States Anti–Doping Agency's [Unopposed][1] Motion to Withdraw Support of Joint Motion for Protective Order [filed April 19, 2001]; (5) Plaintiff's Motion to Compel [filed April 20, 2001]; (6) Defendant United States Olympic Committee's Motion for Sanctions [filed May 3, 2001]; and (7) Plaintiff's Objection ... [filed August 6, 2001]. The motions were referred to the undersigned magistrate judge on April 23, 2002. The motions are fully briefed and the court heard oral argument on May 21, 2002.

John W. McKendree, Elizabeth G. McKendree, John W. McKendree Law Offices, John Kenneth Pineau, John Kenneth Pineau, PC, Denver, CO, Derek M. Strauss, Mertes & Strauss, Boulder, CO, Cherylin K. Vandergrift, Cherylin K. Vandergrift, Golden, CO, for Wade F. Exum.

Raymond M. Deeny, Sherman & Howard, Colorado Springs, CO, William Albert Wright, Sherman & Howard, Katherine J. Peck, Holme, Roberts & Owen, LLP, Michael D. Nosler, Vance Orlando Knapp, Rothgerber, Johnson & Lyons, LLP, Denver, CO, for United States Olympic Committee, United States Anti–Doping Agency.

Michael Patrick O'Brien, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT,

1. *See* Certificate of Compliance with

D.C.COLO.LR 7.1 [filed April 19, 2001].

Defendant USOC filed a Motion for Protective Order on November 22, 2000 to restrict the disclosure of all documents relating to drug testing of athletes and all documents protected by confidential agreements between any party and any other person or entity. *See* USOC Motion for Protective Order, Ex. R. Plaintiff opposed the proposed protective order on the grounds that it is overly broad and is not supported by good cause. At the May 21, 2002 motions hearing, defendant USOC clarified that the only documents which it sought to protect from disclosure outside this litigation at this time are the documents generated in conjunction with the drug testing of individual athletes, beginning with the Athlete Signature Form completed by each athlete, transmittal and coding documents, drug testing results, chain of custody and split sample testing documents, concluding with the appeal process for any sanctions issued because of a positive drug test result. (*See, generally,* Exs. H through Q attached to USOC's Motion) Plaintiff objects to a protective order which would restrict his right to disseminate the drug testing documents with the athlete's names redacted. Plaintiff's personal belief is that the athletes' names should be kept confidential.

### I. *Motions to Intervene*

The Associated Press, CBS Broadcasting, Inc., Cable News Network, L.P., LLLP, Daily News, L.P., The Denver Post, Inc., Freedom Communications, Inc., National Public Radio, Inc., Tribune Company, and USA Today (hereinafter collectively "the press") seek to intervene in this case under Fed.R.Civ.P. 24(2) to challenge USOC's motion for protective order and proposed protective order. The press asserts that the public has a presumptive right of access to unfiled discovery materials under the Federal Rules of Civil Procedure, unless good cause for confidentiality is shown.[2] *See In re Agent Orange Product Liability Litigation,* 821 F.2d 139, 145–146 (2d Cir.1987); *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 788–790 (1st Cir.1988); *San Jose Mercury News, Inc. v. United States District Court,* 187 F.3d 1096,

1103 (9th Cir.1999). Defendant USOC opposes the motions to intervene on the ground that the press lacks standing to challenge USOC's motion for protective order.

■ Fed.R.Civ.P. 24(b) provides: "Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Permissive intervention under Fed.R.Civ.P. 24(b) is the appropriate procedural device for third parties to challenge a protective or confidentiality order. *See United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424 (10th Cir.1990); *see, also, Public Citizen,* 858 F.2d at 783–84; *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 778 (3rd Cir.1994); *In re Beef Industry Antitrust Litigation,* 589 F.2d 786, 789 (5th Cir.1979); *San Jose Mercury News, Inc.,* 187 F.3d at 1103 (9th Cir.1999); *Daines v. Harrison,* 838 F.Supp. 1406, 1408 (D.Colo.1993) (Nottingham, J.).

■ The parties seeking intervention under Rule 24(b) must have standing to challenge the proposed protective order. To satisfy the requirements of Article III, Section 2 of the Constitution, movants must demonstrate that a "case or controversy" exists between the press and defendant USOC which is proper for judicial resolution. Standing requires an injury-in-fact that is traceable to the defendant and is likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

■ The press asserts that the proposed protective order would impede its ability to gather the news by prohibiting members of the press from obtaining discovery materials from a party to this litigation. The press maintains that the alleged failure of defendant USOC to honestly and consistently enforce its stated anti-doping policies is a matter of significant public concern and controversy.

---

**2.** Movants do not assert a right of access to unfiled discovery materials under the First

Amendment or the common law. *See* Brief of the Associated Press, *et al.,* at p. 7 n. 2.

The court finds that the press has satisfied the first two prongs of the standing inquiry by alleging an impediment to its ability to report the news that is traceable to the defendant's motion for protective order and proposed protective order.

■ The redressability prong is more problematic. The press must show that it will have access to the desired information if the proposed protective order is not entered. Parties to litigation have a First Amendment right to disseminate information they obtained in discovery absent a valid protective order. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). The court cannot compel the parties to disseminate discovery materials to third parties however. *See Oklahoma Hosp. Ass'n v. Oklahoma Publishing Co.,* 748 F.2d 1421, (10th Cir.1984) (citing *Wooley v. Maynard,* 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977)). Further, depositions and responses to discovery requests are not filed with the court unless the court orders filing, or the materials are filed by the parties in connection with a pleading or motion.[3] *See* Fed.R.Civ.P. 5(d). The court has not ordered that discovery materials be filed in this case and it is not asserted that any of the discovery materials covered by the proposed protective order have been filed by the parties in conjunction with a pleading or motion. Accordingly, if the protective order is not entered, the press may obtain access to materials produced to plaintiff in discovery only if the plaintiff exercises his right to disseminate those materials. *See Oklahoma Hosp. Ass'n,* 748 F.2d at 1425; *Public Citizen,* 858 F.2d at 781–82.

In *Oklahoma Hosp. Ass'n,* a publishing company challenged the district court's imposition of a protective order on the ground that the protective order impeded its First Amendment right to gather information. The Tenth Circuit held that the publishing company did not have standing to challenge the imposition of the protective order be-

cause it was unlikely that the publisher would succeed in obtaining access to the documents covered by the protective order if the order was lifted. 748 F.2d at 1425. The United States Court of Appeals for the Tenth Circuit, emphasizing that none of the parties to the protective order objected to the order or filed an appeal, concluded: "In light of the fact that the parties have not chosen to assert their rights of dissemination, we view it as highly unlikely that they would do so were we simply to lift the protective orders at this time." *Id.*

Plaintiff opposes a protective order which would restrict his right to disseminate athlete drug testing records because, without information identifying the tested athlete, plaintiff does not consider the drug testing records to be confidential. Plaintiff has however, stated that he will not disclose the names of the tested athletes to third parties. Although the press represented at the hearing that the drug testing records are not as newsworthy without the athletes' names, it appears that the press may obtain access to at least some of the information it seeks if a protective order is not entered. Accordingly, the court finds that the press has standing to intervene in this case for the purpose of challenging the motion for protective order.

■ The press also argues that, to the extent the proposed protective order covers materials which may be filed by the parties in connection with a dispositive motion or entered into the court record as trial exhibits, the proposed order interferes with its presumptive public right of access to civil court files. The court notes that the dispositive motions deadline has passed. The only dispositive motions filed are defendants' motions for summary judgment, filed on March 29, 2001. The exhibits attached to the parties' pleadings relating to the summary judgment motions do not include any of the drug testing records for which a protective order is sought. Because the drug testing records

**3.** The filing of a document with the court gives rise to a presumptive right of public access. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *Crystal Grower's Corp. v. Dobbins,* 616 F.2d 458, 460–61 (10th Cir.1980); *FTC v. Standard Finan-*

*cial Management Corp.,* 830 F.2d 404, 409 (1st Cir.1987); *Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157, 161–162 (3rd Cir.1993); *Smith v. United States District Court,* 956 F.2d 647, 650 (7th Cir.1992).

have not been filed under seal as exhibits to the summary judgment briefs, or as attachments or exhibits to any other pleading or motion filed in this action, the press cannot demonstrate an injury-in-fact to its right of access to filed documents. To the extent the press challenges the future filing of trial exhibits under seal, the issue is not ripe for disposition at this time. Accordingly, the press motions will be granted in part and denied in part so that the press may intervene and be heard for the *sole* purpose of challenging Defendant United States Olympic Committee's Motion for Protective Order and proposed protective order.

## II. *Motion for Protective Order*

Under Fed.R.Civ.P. 26(c), a party must demonstrate "good cause" for entry of a protective order. Conclusory or stereotypical assertions are insufficient to show good cause. *See Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *In re Terra Int'l, Inc.,* 134 F.3d 302, 306 (5th Cir.1998); *Alfadda v. Fenn,* 149 F.R.D. 28, 34 (S.D.N.Y.1993). Instead, the party seeking a protective order must show that disclosure will result in a clearly defined and serious injury to the party seeking protection. *Pansy,* 23 F.3d at 786. Further, the good cause requirement must be met even if the parties agree, in whole or in part, to a protective order. *Bryan v. Eichenwald,* 191 F.R.D. 650, 652 (D.Kan.2000) (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 944 (7th Cir. 1999)) (stating that the law requires a showing of good cause to seal any part of the record in a case because the public has a legitimate interest in all stages of a judicial proceeding).

Generally, the "good cause" determination requires the court to balance the party's need for the information against the injury which might result from unrestricted disclosure. *Pansy,* 23 F.3d at 787; *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1313 (11th Cir.2001). The court should also consider privacy interests and whether the case involves issues important to the public. *Pansy,* 23 F.3d at 788; *In re Agent Orange Product Liability Litigation,* 821 F.2d at 146. In the absence of a showing of good cause for confidentiality, the parties are free to disseminate discovery materials to the public. *Public Citizen,* 858 F.2d at 789–90; *In re Agent Orange Product Liability Litigation,* 821 F.2d at 145–46; *Citizens First Nat'l Bank of Princeton,* 178 F.3d at 944–45; *San Jose Mercury News, Inc.,* 187 F.3d at 1103.

Defendant USOC does not seek to restrict plaintiff's access to copies of the drug testing records;[4] instead, USOC urges the court to restrict plaintiff's ability to disclose the information outside the confines of this litigation. USOC argues that a protective order is necessary to protect the athletes from embarrassment and annoyance and that the athletes' privacy rights outweigh the public's interest in disclosure.

Plaintiff responds that USOC's conclusory assertions that the athletes will be embarrassed and annoyed by the disclosure of drug testing records is insufficient to demonstrate good cause for entry of a protective order. Plaintiff further maintains that although he considers the athletes' drug tests to be confidential, drug testing records are not confidential, and are not treated as confidential by the majority of the Olympic governing bodies throughout the world.

The press asserts that the public interest in Olympic athletes' positive drug test results outweighs the athletes' minimal privacy interests in those results. The press emphasizes that USOC is a public body charged with: obtaining the most competent amateur representation possible for the United States; "promot[ing] and encourag[ing] physical fitness" in the United States; and, encouraging and supporting research and "dissemination of information" in the areas of "sports medicine and sports safety." *See* 36 U.S.C. § 220501(4), § 220503(4), (6) and (11). The press argues that the drug testing

---

4. USOC contends that the drug testing records are irrelevant to plaintiff's claims in this case and are thus not discoverable. Defendant's argument is moot because the court has determined that the drug testing records are discoverable. *See* Preliminary Pretrial Order entered March 14, 2001, at p. 30.

records which USOC seeks to protect from disclosure will reveal whether USOC acted contrary to its statutory mandate and will verify or disprove the shocking allegations of plaintiff's complaint that USOC impeded efforts to eliminate athlete doping and failed to enforce anti-doping policies. The press contends that the athletes' privacy interest in their drug testing records is minimal because they have agreed to abide by the anti-doping rules and policies. Further, positive athlete drug testing results have been announced to the public on several occasions by several national and international sports federations officials and by International Olympic Committee officials. *See* Declaration of Vicki Michaelis in Opposition to the USOC's Motion for a Protective Order [filed December 6, 2000].

The court finds that USOC has failed to demonstrate good cause as required by Rule 26(c). Rather, the evidence presented to the court is that the athletes do not have a reasonable expectation of privacy with respect to drug testing or in the information they give to the USOC for drug testing purposes, although Dr. Exum did consider the information to be confidential. *See* USOC Motion, Ex. E. The medication history form specifically states that the information provided is "not to be considered a confidential medical record." USOC Motion, Ex. G. The documents outlining the procedures for giving a urine specimen, identifying recently used medications, and coding the athlete's urine specimen so that his name is not known at the time of testing do not contain any private medical information divulged in the context of a patient-physician relationship, so it cannot be considered confidential. *Id.,* Ex. H. The athlete roster form giving the names of the athletes tested over an eight day period does not contain any confidential medical information. *Id.,* Ex. I. Documents showing the chain of custody of the specimens contain the coded bottle numbers and the test results, but do not contain any medical information. *Id.,* Ex. J. The laboratory manifest with the list of coded bottles and the test results also does not contain any medical information. *Id.,* Ex. K. While some governing bodies of the particular sport involving the athlete are notified of test results

stamped "confidential", *id.,* Exs. L, M, the athlete is notified of a positive test result in an unstamped letter. *See e.g. id.,* Ex. N. The procedures given to the athlete to test the split sample and to appeal any action taken as a result of the positive test are also not marked as confidential. *Id.,* Exs. N–P.

The court finds that, despite Dr. Exum's occasional treatment of the test results as confidential, *see* Exs. E, Q, the athletes do not have a reasonable expectation of privacy with respect to urine drug test results. They sign a form asking for the medications they are taking which is the precursor to the urine test and which clearly states it is not confidential. The athletes are not advised at any point that the urine test results will be confidential. USOC has produced nothing to refute Vicki Michaelis' Declaration stating that positive drug test results are routinely made public, and USOC has offered no authority in support of its position that urine test results for drugs have been considered private or confidential by any court. Accordingly, there is no need for a protective order for the USOC drug testing documents, such as exhibits G through Q attached to USOC's motion.

### III. *Plaintiff's Motion to Compel and Defendant's Motion for Sanctions*

 Plaintiff filed the curious document entitled "Plaintiff's Withdrawal of his Motion for Protective Order and Substitution of his Motion to Compel" on April 21, 2001. In that motion, he complains that USOC will not allow him to copy the drug test results which are the subject of USOC's Motion for Protective Order.

USOC moves for sanctions in response to plaintiff's motion to compel because plaintiff failed to comply with Local Rule 7.1. A requiring attempts to confer to resolve the issue prior to filing a motion, because USOC never refused to produce the documents, but only delayed permission to copy them while the parties attempted to agree on a suitable protective order. USOC also argues that plaintiff failed to follow Local Rule 30.1B.

The court finds that USOC did produce the disputed documents for inspection in ac-

cordance and that copying was delayed because the parties could not agree on language for a protective order. Accordingly, USOC has fully complied with Rule 26(a) so that plaintiff's motion to compel was inappropriate and in violation of Rule 37. Plaintiff's motion to compel was also filed in violation of Local Rule 7.1.A because there was no meaningful attempt to resolve the dispute before filing the motion. Plaintiff further failed to comply with the then applicable local rule which stated that "[t]he filing of a motion under [Rule 26(c)] shall stay the discovery to which the motion is directed until further order of the court." *See* D.C.COLO.L.R. 30.1B (2001). Because plaintiff failed to abide by the local rules and failed to meet any of the requirements of Rule 37, sanctions are appropriate.

## IV. ORDERS

For the reasons stated herein, it is

**ORDERED** that the Motion of the Associated Press, CBS Broadcasting, Inc. [*et al.*] to Intervene, or, in the Alternative, to be Heard in Opposition to the Defendants' Motion for Protective Order [filed November 27, 2000] and USA Today's Motion to Intervene [filed December 6, 2000] are **GRANTED IN PART AND DENIED IN PART** as set forth in this Order. It is further

**ORDERED** that Defendant United States Anti–Doping Agency's [Unopposed][5] Motion to Withdraw Support of Joint Motion for Protective Order [filed April 19, 2001] is **GRANTED.** It is further

**ORDERED** that Defendant United States Olympic Committee's Motion for Protective Order [filed November 22, 2002] is **DENIED** in its entirety. It is further

**ORDERED** that plaintiff's counsel are to have access to those records in USOC's possession which are the subject of the motion for protective order for review and copying until **June 15, 2002.** It is further

**ORDERED** that Plaintiff's Motion to Withdraw His [March 28, 2001] Motion for Protective Order [filed April 20, 2001] is **GRANTED** and his motion for protective

order is therefore **DENIED** as moot. It is further

**ORDERED** that Plaintiff's Motion to Compel [filed April 20, 2001] is **DENIED** as mooted by the denial of USOC's motion for protective order. It is further

**ORDERED** that USOC's Motion for Sanctions [filed May 3, 2001] is **GRANTED.** USOC counsel shall file an affidavit of reasonable fees and costs incurred in response to plaintiff's motion to compel no later than **June 5, 2002.** Plaintiff's objections are to be filed no later than **June 15, 2002.** Any dispute over the fees and costs sought will be heard at the final pretrial conference on June 24, 2002. It is further

**ORDERED** that any **further motions practice** in this case is **limited to the filing of a motion and a response. There will be no further supplements, replies, responses to replies or surreplies to any future motion.** It is further

**ORDERED** that plaintiff's "Objection" to the court's minute order [filed August 6, 2001] is **denied.** It is further

**ORDERED** that **a final pretrial conference** is set for **June 24, 2002 at 10:00 a.m. in** C–504. The proposed final pretrial order in the format which may be downloaded form the forms section of the court's website at *www.co.uscourts.gov* is due by **June 21, 2002.**

---

5. *See* Certificate of Compliance with D.C.COLO.LR 7.1 [filed April 19, 2001].