Fremont-Smith, J.
In this case, the estate of the late Celtics star Reggie Lewis brings a medical malpractice action against Lewis’ treating doctors. Intervener New England Cable News (“NECN”) seeks an order requiring that all pre-trial discoveiy in the hands of the parties’ counsel, including deposition transcripts, exhibits, interrogatoiy responses and answers to document requests be filed with the Clerk of Court, so as to permit media access thereto. The parties to the lawsuit oppose the motion. After oral argument in consideration of the motion papers submitted by NECN and the parties, the Court DENIES NECN’s motion for the following reasons.
In the first place, the United States Supreme Court has decided that the public has no constitutional right of access to pre-trial discovery materials under the First Amendment. In Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984), the trial court had issued a protective order prohibiting the parties from disseminating information pertaining to the membership and finances of a religious group, the dissemination of which, the group claimed, would adversely affect their membership and income and would subject its members to harassment and reprisals. The trial court agreed, and entered a protective order prohibiting any dissemination of such information to the public. The Supreme Court of Washington affirmed, and on appeal, the United States Supreme Court also affirmed. The Court noted, at 33, that pre-trial depositions and interrogatories were not, historically, public components of a civil trial and that “much of the information that surfaces during pre-trial discoveiy may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.” The Court further noted that “it is clear from experience that pre-trial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discoveiy.” Id., at 34-35.
The Supreme Court went on to note that there is an opportunity in pre-trial discoveiy for litigants to obtain, incidentally or purposely, “information that not only is irrelevant but if publicly released could be *699 damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse in its processes.” Id., at 35.
Subsequent decisions interpreting Seattle Times Co. have similarly recognized the wide latitude of discretion afforded a trial judge in either issuing a protective order limiting public access to pre-trial materials, or in later modifying such a protective order so as to permit public access, usually after a settlement or trial.[1] Thus, in Public Citizen v. Liggett Group, Inc., 858 F.2d 775 (1st Cir. 1988), cert. denied, 488 U.S. 1030 (1989), the First Circuit Court of Appeals noted that although there is no first amendment or common law right to public access to discovery materials, the federal rules create a presumption in favor of public access of pre-trial materials, so that the District Court did not abuse its discretion in ordering public disclosure of tobacco industry documents after the case had been dismissed,[2] where no good cause had been shown for a protective order prohibiting it.[3] The Court, in noting the presumption in favor of public access under the federal rules, pointed out that F.R.C.P., Rule 5(d) provides: “All papers after the complaint required to be served upon a party shall be filed with the Court either before service or within a reasonable time thereafter, unless the Court otherwise orders.”[4]
Similarly, in Anderson v. Cryovac, Inc., 805 F.2d 1, 8 (1st Cir. 1986), the First Circuit Court of Appeals, after noting that there is no constitutional or common law public right to access to discovery materials, affirmed a protective order under Federal Rule 26(c), prohibiting such access, where the protective order met the requirements of “good cause,” was restricted to the discovery context, and did not restrict dissemination of information learned by counsel from other sources. Id., at 9. In upholding the District Court’s finding of good cause for a protective order under Federal Rule 26(c), the First Circuit found it sufficient that “the District Court was concerned that the extensive publicity generated by the allegations made against the defendants, particularly the accounts appearing in the daily newspapers, would inhibit and perhaps prevent the selection of an impartial jury,” and approved the District Court’s finding that “the massive amount of publicify and emotionally charged nature of the trial will be reasonably likely to cause material harm to the defendant’s right to a fair trial.” Id., at 8. It further pointed out that the news media in that case had been allowed access to materials considered in connection with a motion for summary judgment and that this was consistent with “a public right of access to materials considered in rulings on dispositive pre-trial motions . . .” Id., at 8. The Court held, however, that the right to public access “does not extend to documents submitted to a court in connection with discovery proceedings,” id., at 11, and concluded that “discovery proceedings are fundamentally different from proceedings to which the courts have recognized a public right of access.” Id., at 12. The First Circuit went on to point out that “if such access were to be mandated, the civil discovery process might actually be made more complicated and burdensome” and, “rather than facilitate an efficient and complete expiation of the facts and issues, a public right of access would unduly complicate the process.” Id., at 12, quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 599 (1978). Finally, the First Circuit opined that “the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.” Id., at 13.[5] Accord: Oklahoma Hospital Association v. Oklahoma Pub., Co., 748 F.2d 1421, 1425 (10th Cir. 1984), cert. denied, 473 U.S. 905 (1985) (holding that a publishing company had no constitutional or other right of access to pre-trial documents not filed with the court, and declining to overturn the District Court’s denial of a motion to vacate a protective order to which the parties had stipulated); Agent Orange Product Liability Litigation, 821 F.2d 139, 146-48 (2nd Cir. 1987), cert. denied, sub nom. Dow Chem. Co. v. Ryan, 484 U.S. 953 (1984) (holding that the District Court did not abuse its discretion when it modified a protective order after settlement, to permit public access to pre-trial materials in spite of a protective order to the contrary, which it viewed as having had been initially justified). In doing so, the Court stressed that (unlike Massachusetts Rule 5(d)(2)), the federal rules require most discovery materials to be filed, and that the Advisory Committee which promulgated the federal rules had specifically discussed, but rejected, a provision similar to Massachusetts Rule 5(d)(2) (which is similar to rules promulgated, as local rules, by some federal district courts), thereby indicating that the drafters of the federal rules intended to create a presumption in favor of public access to pre-trial discovery materials.[6] Thus, not only was the Rule under which Agent Orange decided significantly different from the Massachusetts Rule, but the trial judge’s exercise of his discretion in favor of public access in that case was only done after the case had been resolved (rather than, as is sought here, just two months before the start of trial).
Other cases cited by NECN and by the Boston Globe at the time of hearing, are inapposite and in no way alter the controlling legal principles enunciated in Seattle Times Co., supra, and in the other cases discussed above. Some were decided before the 1984 Seattle Times Co. decision, while others address the quite different question of a court’s impoundment of court-filed documents.[7] See Newspapers of New England, Inc. v. Clerk-Magistrate of the Ware Div. of the Dist. Ct., 403 Mass. 628 (1988), cert. denied, 490 U.S. 1066 (1989) (impoundment order of affidavit in support of a criminal search warrant, which had been filed in court, affirmed); H.S. Gere & Sons, Inc. v. Frey, 400 Mass. 326 (1987) (impoundment order seeking entire *700 file, including settlement, in a civil case, affirmed, as it was within the trial court’s discretion, in a case which involved allegations of rape, as to which the parties had a legitimate desire for privacy); George W. Prescott Pub. Co. v. Register of Probate for Norfolk County, 395 Mass. 274 (1985) (impoundment order of court-filed deposition, deposition notice and financial statements of defendant, who was alleged to have misused public funds, reversed, where the documents were filed in court, the public had a legitimate interest in the alleged misuse of public funds, and defendant was a public official who had, in the circumstances, no legitimate expectation of privacy); Ottaway Newspapers, Inc. v. Appeals Court, 372 Mass. 539 (1977) (impoundment of court papers, in action by Bank Commissioner to remove bank officers, affirmed, although recognizing a “general principle of publicity” as to court-filed documents); Vassiliades v. Israely, 714 F.Supp. 604 (D.Conn. 1989) (motion of plaintiff to impound medical malpractice complaint to avoid publicity, denied); Associated Press v. U.S.Dist. Ct. for C.D. of Cal, 705 F.2d 1143 (9th Cir. 1983) (impoundment order as to all court-filed documents in criminal case remanded to trial court to determine whether public access to particular documents would impinge on defendants’ right to a fair trial).
In deciding whether I should exercise my discretion so as to order pre-trial discovery materials to be filed on the eve of trial, and contrary to the usual practice in Massachusetts, I am mindful that the Supreme Judicial Court has quoted with approval the Supreme Court’s admonition in Seattle Times, Co., supra, that “the trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.” Cronin v. Strayer, 392 Mass. 525, 534 (1984).
Here, plaintiffs counsel’s affidavit in opposition to NECN’s motion states;
The uncontrolled dissemination of discovery materials two months prior to trial would actually be a disservice to the public because it would merely create confusion and taint the jury pool, thus preventing a fair trial. Legal issues, as well as facts, would be subject to misquotation, misinterpretation, and confusion. Items which were discoverable but are not admissible as evidence would be discussed and analyzed by the media prior to trial. None of the parties can expect a fair trial under such circumstances . . . NECN has asserted no interest in this matter sufficient to override the Court’s interest in providing a fair trial for the litigants. NECN will have access to the news as it unfolds at trial, with the benefit of this Court’s rulings on relevancy and admissibility of evidence.
This Court agrees.
In the case at bar, this Court concludes that the voluminous pre-trial discovery materials which have not been filed with the Court, should not now be ordered to be filed so as to create public access thereto. Not only has such material not historically been considered public but, as noted by the United States Supreme Court in Seattle Times, Co., supra, there are legitimate concerns with regard to the privacy and reputation not only of the litigants, but of third parties, which could be significantly impacted by media access to such pre-trial materials. This case, of course, involves allegations of drug use by Reggie Lewis, which, if proven, could be relevant to the medical history and hence, to the diagnosis and treatment plan of his treating physicians. Pursuant to previous motion of the defendants (not opposed by plaintiff), the Court Has ordered the production by Northeastern University of documents pertaining to its investigation of alleged drug use by athletes at Northeastern, including alleged drug use by teammates of Lewis there. Depositions have been taken with regard to the same subject matter. Thus, the reputation and privacy rights of not only Lewis,[8] but also of third parties, may be implicated and tarnished. The Court is also mindful that the media have already had access to certain materials which were filed with the Court by the parties in connection with prior discovery motions, and that another judge of this Court has previously denied a motion to impound such filed materials [9 Mass. L. Rptr. No. 25, 572 (April 19, 1999]. To extend public access to discovery materials which have not been filed would not only be contrary to the presumption of the Massachusetts Rules of Civil Procedure that such material should ordinarily not be filed, but would, in myjudgment, be potentially damaging to the reputation and privacy interests of the litigants and third parties, and would have the potential to result in media saturation which would significantly interfere with the ability of the parties to obtain a fair and impartial jury selection in the trial, which is scheduled to commence in just two months.
Finally, in view of the heavy pre-trial obligations this Court has imposed on the parties by way of its Procedural Order dated February 12, 1999, to require the parties at this juncture to copy and to file all of their voluminous pre-trial materials with the Court, would create a significant logistical burden, on the eve of trial, not only on counsel for the parties, but also on the Clerk’s office.[9]
ORDER
Accordingly, for each of the reasons state above, New England Cable Network’s motion is DENIED.[10]

 No case has been called to our attention in which public access to unfiled pre-trial materials was ordered, prior to resolution of the case.

 Prior to trial, the same trial judge had issued a protective order because “the documents would become public in any event during trial,” and it “wished to conduct that trial free of the pre-trial publicity that might follow premature release of *701 the documents.” Id., at 791. This protective order was not challenged.

 The Court of Appeals did not affirm the District Court order requiring all pre-trial discovery materials to be filed, but did affirm so much of the District Court order which permitted the parties to the litigation to divulge such materials to the Wail Street Journal, if they wished to do so.

 It should be noted that Massachusetts Rules of Civil Procedure, Rule 5(d)(2), as amended in 1989, creates a contrary presumption. Contrary to Federal Rule 5(d), it provides: “Unless the Court, generally or in a specific case, on motion ex parte by any party or concerned citizen, or on its own motion shall otherwise order, the following shall not be presented or accepted for filing: notices of taking depositions, transcripts of depositions, requests under Rule 34, and responses to requests under Rule 34.” (Emphasis supplied.) The fact that the concern which precipitated the 1989 amendment to Massachusetts Rule 5 was that “some courthouses have insufficient storage space, and the filing of discovery documents requires valuable clerical time” (see 1992 Reporters’ Notes) does not change the fact that the Federal Rules of Civil Procedure and the Massachusetts Rules are significantly different in this respect.

 The First Circuit did note that the trial court may not selectively exclude news media from access to information which the trial court’s order had otherwise made available for public dissemination to a particular news organization. Id., at 9.

 As noted above, the presumption created by the Massachusetts Rules of Civil Procedure (in particular, Rule 5(d)(2)), is to the contrary, specifying, as it does, that pre-trial materials are notto be filed unless the trial judge otherwise orders.

. Impoundment, of course, involves a court’s sealing of presumptively public court-filed documents from public access, and makes such documents unavailable to public access, regardless of the desires of the parties. With the one limited exception of this Court’s February 11, 1999 Protective and Impoundment Order, however, no pre-trial materials in this case have been impounded, so that the Uniform Rules on Impoundment Procedure are not applicable.

 While it is true that Lewis may have become something of a “public figure,” this does not justify permitting his memory to be tarnished by what could turn out to be unsubstantiated allegations of drug use in pre-trial discovery.

 The clerk’s office will be burdened in the next two months with the scheduled move of all of the files of the Suffolk Superior Court to a new location in Post Office Square.

 Any pre-trial materials which have been or are filed in the future in connection with any pre-trial motions (whether dispositive or discovery motions), are to be considered part of the public record, as to which the media may have access, unless otherwise ordered by the Court, except to the extent that such materials are filed pursuant to this Court’s Protective and Impoundment Order dated February 11, 1999 [9 Mass. L. Rftr. No. 25, 572 (April 19, 1999]. Materials which are offered and admitted into evidence at the trial shall, of course, likewise be public documents available to the media.