**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 23 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

NATURAL ARCH AND BRIDGE
SOCIETY, a Colorado non-profit
corporation; DAVID BRANDT-
ERICSON, an individual; HARVEY
LEAKE, an individual; EVELYN
JOHNSON, an individual; EARL
DEWAAL, an individual; ROBERT
MOORE, an individual,

      Plaintiffs-Appellants,

v.

JOSEPH F. ALSTON, Superintendent,
Rainbow Bridge National Monument;
ROBERT G. STANTON, Director,
National Park Service; NATIONAL
PARK SERVICE, an agency of the U.S.
Department of the Interior,

      Defendants-Appellees.

-------------------------------------------------

ASSOCIATION ON AMERICAN
INDIAN AFFAIRS, MEDICINE WHEEL
COALITION ON SACRED SITES OF
NORTH AMERICA, and NATIONAL
TRUST FOR HISTORIC
PRESERVATION,

      Amici Curiae.

No. 02-4099
(D.C. No. 2:00-CV-191-J)
(Utah)

# ORDER AND JUDGMENT[*]

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

By a complaint filed on March 3, 2000, the Natural Arch and Bridge Society, a Colorado non-profit corporation; and David Brandt-Ericson, Harvey Leake, Evelyn Johnson, Earl DeWaal, and Robert Moore, as individuals, brought suit in the United States District Court for the District of Utah against Joseph F. Alston, the Superintendent of the Rainbow Bridge National Monument, Robert G. Stanton, the Director of the National Park Service, and the National Park Service ("Park Service"), an agency of the U.S. Department of the Interior. The gist of the complaint was as follows:

> This case concerns the management policies and practices of Defendant National Park Service (Park Service) that prevent visitors to the Rainbow Bridge National Monument (Rainbow Bridge or Monument) from approaching the rock span that is the central attraction of the Monument unless those visitors are Native Americans or are engaging in Native American religious ceremonies.

The first cause of action was based on an alleged violation of the Establishment Clause in the First Amendment of the United States Constitution. A second, and last,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

cause of action was based on an alleged violation of "the Equal Protection component of the Fifth Amendment of the United States Constitution." Jurisdiction was based on 28 U.S.C. § 1331. On May 15, 2000, the defendants filed an answer to the complaint.

After discovery by both sides, the plaintiffs filed a motion for summary judgment and the defendants filed a motion to dismiss. The two motions were consolidated for hearing. On April 5, 2002, the district court entered a memorandum opinion and order in which it denied plaintiffs' motion for summary judgment and granted defendants' motion to dismiss. *Natural Arch and Bridge Society v. Alston,* 209 F.Supp. 2d 1207 (D.Utah 2002). In line therewith, on April 9, 2002, the district court entered the following judgment:

> IT IS ORDERED AND ADJUDGED
>
> that the claims of plaintiffs Moore, Brandt-Ericson, Leake, Johnson and National Arch and Bridge Society are dismissed for lack of standing; plaintiff DeWaal's equal protection claim is dismissed for failure to state a claim upon which relief may be granted. Judgment is entered in the favor of the defendants on plaintiff DeWaal's challenge to the 1993 GMP and Interpretive Prospectus under the Administrative Procedures Act. Plaintiff DeWaal's claim of violation of the First Amendment by employees of the National Park Service is dismissed for failure to join the proper parties as defendants.

On June 5, 2002, the plaintiffs, pursuant to 28 U.S.C. § 1291, filed a notice of appeal from the district court's judgment entered on April 9, 2002. On July 1, 2002, the district court entered a second memorandum opinion and order, which it labeled as being a

"Corrective Text." That order was "entered nunc pro tunc to 5th of April, 2002." *Natural Arch v. Alston,* No. 2:00-C-0191J, at #54 (D.Utah July 1, 2002).

As we understand it, the only persons named as plaintiffs in the complaint filed in the district court who are pursuing this appeal, are Ms. Evelyn Johnson and Mr. Earl DeWaal. Accordingly, we are not here concerned, as such, with the other plaintiffs named in the complaint filed in the district court, i.e., National Arch and Bridge Society, Robert Moore, David Brandt-Ericson, and Harvey Leake. Further, as we understand it, we are not here concerned, as such, with the second cause of action in the complaint filed in the district court, i.e., the cause which was based on the "equal protection" component of the "due process" clause of the Fifth Amendment. Thus, we are only concerned here with Johnson's and DeWaal's first cause of action, which was a challenge to the Park Service's policies and practices based on the Establishment Clause of the First Amendment. As to Johnson, the district court held that Johnson had no standing to assert a claim based on an alleged violation of the Establishment Clause. However, as to DeWaal, the district court held that while DeWaal did have standing to assert a claim based on the Establishment Clause, he had failed to state a claim upon which relief could be granted, and his first cause of action was subject to a motion to dismiss. In line therewith, the district court denied plaintiffs' motion for summary judgment.

As indicated at the outset, Johnson and DeWaal challenge the policies and practices of the Park Service as such related to the Rainbow Bridge National Monument in Southern

Utah, claiming that "the challenged policy violates the Establishment Clause of the First Amendment because that policy has the purpose and effect of endorsing American Indian religion and results in excessive entanglement of the federal government in religious matters." In the complaint, the plaintiffs in challenging the practices and policies of the Park Service alleged the following:

> Pursuant to the General Management Plan the Park Service placed signs around the Monument announcing the "sacred" nature of Rainbow Bridge. Some of the signs read as follows: "Neighboring Indian tribes consider Rainbow Bridge a sacred religious site. Please respect these long-standing beliefs. Please do not approach or walk under Rainbow Bridge." "To Native American tribes/nations, Rainbow Bridge is a sacred religious site. In respect of these long-standing beliefs, we request your <u>voluntary compliance</u> in not approaching or walking under Rainbow Bridge."

> \* \* \* \* \*

> The Park Service has also posted two declarations on its official Rainbow Bridge website that read as follows: "Please visit Rainbow Bridge in a spirit that honors and respects the cultures to whom it is sacred." "To Native American nations, Rainbow Bridge is sacred. Please respect these long-standing beliefs. We request your <u>voluntary</u> <u>compliance</u> in not approaching or walking under Rainbow Bridge." (Emphasis added.)

Germane to our discussion are the several "encounters" between Johnson and DeWaal with park employees. In the complaint, Johnson alleged that in October, 1997, the following encounter occurred between herself and park officials:

> The same Ranger then approached Mrs. Johnson's group and ordered them to leave the area.

When asked why they should move the Ranger told them that their presence on the far side of Rainbow Bridge had the effect of encouraging others to walk underneath the bridge. Although they wanted to stay where they were, Mrs. Johnson and the others were compelled to comply with the Ranger's demands.

In the complaint, DeWaal alleged an encounter with the park service employees as follows:

On July 18, 1999, Earl DeWaal and members of his family and friends traveled to Rainbow Bridge. While taking in the view from the official viewing area, Mr. DeWaal asked a Park Service Ranger if anyone was allowed to walk underneath the Monument. The Ranger initially told Mr. DeWaal that no one could approach the Monument. However, when Mr. DeWaal asked for a reason, the Ranger capitulated and told him that he (Mr. DeWaal) could use the official trail to Rainbow Bridge, but threatened to cite or arrest him if he stepped off of the trail. However, there was no visible "trail" to Rainbow Bridge, and when Mr. DeWaal asked the Ranger to point out the path the Ranger refused, telling Mr. DeWaal that he should talk to a supervisor.

Immediately thereafter, Senior Ranger Mike Dedman arrived. Mr. DeWaal informed Rander Dedman that preventing visitors from approaching Rainbow Bridge was unlawful. Ranger Dedman responded by offering to escort Mr. DeWaal and some members of his group to Rainbow Bridge. Just then, another group of people from an official tour group arrived. Ranger Dedman withdrew his offer of escort and told Mr. DeWaal that no one could use the trail. When asked for a reason why, Ranger Dedman responded that use of the trail was prohibited for reasons of protecting Native American religion–specifically, in order to prevent desecration of the site. Ranger Dedman confirmed that if Mr. DeWaal attempted to approach Rainbow Bridge he would be cited or arrested. Although he wanted to use the trail to walk underneath Rainbow Bridge, Mr. DeWaal was compelled not to for fear of being cited or arrested.

In his deposition, DeWaal mentioned an additional encounter he had with the park service in 1998.  On appeal, counsel, in his brief, refers to that encounter as follows:

> In July or August of 1998, Earl DeWaal traveled to the Monument with his wife, Vickie, and several of their children.  A uniformed National Park Service Interpreter/Ranger requested that Mr. DeWaal and his family not approach or walk beneath Rainbow Bridge. . . . . Although Mr. DeWaal and his family wanted to walk beneath Rainbow Bridge, Mr. DeWaal and his family felt compelled by the actions and authority of the National Park Service Interpreter/Ranger and did not approach Rainbow Bridge.  *Id.*

The present case challenging the policies and practices of the Park Service was brought pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701-06 (2000).  The plaintiffs sought declaratory and injunctive relief from those policies which informed visitors to the Rainbow Bridge National Monument about the cultural and religious significance of Rainbow Bridge to Native American tribes in the area, including a policy of asking visitors to voluntarily refrain from approaching or walking under the Bridge. (In this regard, the record indicates that, while the plaintiffs refrained from walking under the bridge, the "policies and practices" of the Park Service wherein it asked visitors to voluntarily comply did not deter many others who, in fact, did walk under the bridge.)  In support thereof, their complaint set forth the several "encounters" between Johnson, in 1997, and DeWaal, in 1999, and the park officials.

Johnson and DeWaal further alleged in their complaint that the Park Service's policy of encouraging visitors to refrain from walking under the Bridge violated the

Establishment Clause of the First Amendment to the Constitution because it had the purpose and effort of advancing and endorsing Native American religion.

Although this is a review of an administrative policy pursuant to the Administrative Procedures Act, the district court, with the consent of all parties, permitted discovery, which included, *inter alia,* testimony concerning the "encounters" between Johnson and DeWaal with park employees. It was in this setting that the defendants filed a motion to dismiss and Johnson and DeWaal, and the other plaintiffs, filed a motion for summary judgment. As indicated, the district court dismissed the claim of Johnson on the grounds that she did not have standing. The district court also held that DeWaal did not have standing based on his "encounter" with park officials in 1999, but that he did have standing on his 1998 "encounter" with park officials. As to that aspect of the case, the district court went on to hold that the policy and practice of the Park Service to ask visitors to voluntarily refrain from walking under the Bridge did not violate the Establishment Clause.

The first issue to be resolved is whether the district court erred in holding that Johnson lacked standing, and that DeWaal had standing to bring this action. Our study of the matter convinces us that the district court was correct in holding that Johnson lacked standing, and that the district court erred in concluding that DeWaal had standing to maintain the action.

In *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-1 (1992), the Supreme Court

articulated the "irreducible constitutional minimum" necessary to Article III standing as follows:

> First, the plaintiff must have suffered an "injury in fact" - - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical'[.]" Second, there must be a causal connection between the injury and the conduct complained of - - the injury has to be "fairly . . . trace[able] to the challenged action of the defendant . . . and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." (Citations omitted.)

In line therewith, in *Ash Creek Mining Co. v. Lujan,* 969 F.2d 868, 874-5 (10th Cir. 1992), we said that a party who would invoke federal jurisdiction "bears the burden of establishing these elements" set forth in *Lujan v. Defenders of Wildlife.* In *State of Utah v. Babbitt,* 137 F.3d 1193, 1202 (10th Cir. 1998), we stated that "[s]tanding is not measured by the intensity of a party's commitment, fervor, or aggression in pursuit of its alleged right and remedy." In that same case, we went on to speak as follows:

> "[the elements of constitutional standing] are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case." *Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. at 2136. Consequently, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

*State of Utah v. Babbitt,* 137 F.3d at 1204.

As previously stated, in our view the district court was correct in holding that

Johnson did not have standing to maintain this action and that, contrary to the holding of the district court, DeWaal also did not have standing. *Bear Lodge Multiple Use Ass'n. v. Babbitt,* 175 F.3d 814 (10th Cir. 1999), *cert. denied,* 529 U.S. 1037 (2000), has particular pertinency to the present case. The fact situation in *Bear Lodge* is quite similar to the fact situation in the instant case. *Bear Lodge* concerned a national monument in Wyoming where the Park Service had a policy of asking that climbers "voluntarily refrain from climbing during the month of June when American Indians engage in The Sun Dance and other ceremonies." *Id.* at 815. The "climbers" challenged that policy and practice. In *Bear Lodge*, the district court held that the plaintiffs there had standing to maintain the action, but dismissed their claims on the merits. On appeal, we held that none of the plaintiffs had standing, and we did not reach the merits of the case. In so doing, we spoke in *Bear Lodge* as follows:

> In short, the Climbers "claim that the Constitution has been violated, [but] they claim nothing else. They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 485, 102 S.Ct. 752, 765, 70 L.Ed2d 700 (1982). The Climbers are clearly incensed by the NPS' request that they voluntarily limit their climbing, but
>
>> standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy. That concrete adverseness which sharpens the presentation of issues, is the anticipated consequence of proceedings commenced by one who has been <u>injured in</u>

- 10 -

> fact; it is not a permissible substitute for the
> showing of injury itself.
>
> *Id.* at 486, 102 S.Ct. at 766 (internal quotations and citations
> omitted). Because they have alleged no injury as a result of
> their claim, the FCMP improperly establishes religion, we
> hold the Climbers have no standing to sue in this case.
> (Emphasis added.)

*Bear Lodge Multiple Use Ass'n. v. Babbitt,* 175 F.3d at 822.

Counsel suggests that the present case is different from *Bear Lodge*. We disagree. We believe this case is controlled by *Bear Lodge.* In short, under *Bear Lodge*, neither of these plaintiffs has standing to challenge the "policy or practice" of the Park Service, which asks visitors to "voluntarily" refrain from going to a certain area of the park out of respect for the religious significance the particular area has for a Native American Indian tribe, on First Amendment grounds.

Based on *Bear Lodge,* we affirm the district court's dismissal of Johnson's claim based on lack of standing, and, at the same time, we affirm the district court's ultimate dismissal of DeWaal's claim. However, in connection with DeWaal, we, unlike the district court, are of the view that he, too, lacked standing, and, as in *Bear Lodge,* we do not reach the merits of his claim that the policies and practices of the Park Service asking visitors to voluntarily refrain from approaching and walking under the bridge violated the Establishment Clause of the First Amendment.

Judgment affirmed.

Entered for the Court,

Robert H. McWilliams
Senior Circuit Judge