In re ADAM AIRCRAFT INDUSTRIES, INC., Debtor.

Jeffrey A. Weinman, Chapter 7 Trustee, Plaintiff,

v.

George F. Adam, Jr., Defendant.

Bankruptcy No. 08–11751.
Adversary No. 08–1655 MER.

United States Bankruptcy Court, D. Colorado.

June 22, 2009.

**264**

M. Frances Cetrulo, Denver, CO, for Debtor.

Frank J. Schuchat, Harold G. Morris, Jr., Harrie F. Lewis, John C. Knudsen, John C. Smiley, Scott T. Varholak, Theodore J. Hartl, Paul Moss, Denver, CO, for Plaintiff.

Todd L. Vriesman, Denver, CO, for Defendant.

## ORDER

MICHAEL E. ROMERO, Bankruptcy Judge.

THIS MATTER comes before the Court on the **Motion for Protective Order Re: Written Discovery of Medical Information** (the "Motion") filed by the Defendant, George F. Adam, Jr. ("Adam") and the **Trustee's Response to Motion for Protective Order** (the "Response") filed by the Plaintiff, Jeffrey Weinman (the "Trustee"). The Court has considered the pleadings, evidence and legal arguments presented by the parties, and hereby makes the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (H), as it concerns the administration of the estate, the determination of the allowance or disallowance of a claim against the estate, and the determination or avoidance of fraudulent conveyances.

## BACKGROUND FACTS[1]

Adam co-founded the Debtor, Adam Aircraft Industries, Inc. (the "Debtor" or "Industries") in 1998 and served as an officer and a member of the board of directors of

---

1. All references to Exhibits are to the Trustee's Exhibits presented at the hearing on May 11, 2009.

that entity until 2007. Industries purchased and owned three "key man" life insurance policies insuring Adam's life for a total of $10,000,000.[2]

The Trustee commenced this adversary proceeding by filing a Complaint against Adam to avoid and recover the transfer of the three policies (the "Complaint"). The Trustee alleges the Debtor, without receiving any consideration, transferred the ReliaStar policy to Adam on October 19, 2007, the Transamerica policy to Adam on November 1, 2007, and the MN Life policy to Adam on January 15, 2008.[3] All three transfers were made within two years of the Debtor's February 15, 2008 bankruptcy petition date. Adams denied the Trustee's four claims for relief and specifically responded:

> Defendant admits that in the summer of 2007, Adam entered into an agreement with Debtor in which Adam tendered his resignation in partial exchange for the transfer of the three 'key-man' life insurance policies as Adam would no longer serve as a 'key-man' for the cor-

poration. Defendant further states that Recondo Technology, Adam's new employer, is the named beneficiary on the Transamerica policy, while Pat Adam is the named beneficiary on the MN Life policy and the ReliaStar policy.

*Answer*, ¶ 5.

## MOTION FOR PROTECTIVE ORDER[4]

### Defendant's Motion

Adam's Motion pursuant to Fed.R.Civ.P. 26(c),[5] alleges the Trustee wishes to sell the three policies to third-party "investors." Essentially, these investors speculate on the life expectancy of the insured by paying the policies' premiums over time, and receive the life insurance payout when the insured dies.[6] Adam filed his Motion in response to the Trustee's discovery requests, including thirty interrogatories and thirteen requests for production of documents. Adam opposes eleven interrogatories and one document request which seek information on Adam's current health or physical condition.[7] Adam also

---

**2.** Those policies are as follows:

(1) Security–Connecticut Life Insurance Company, a/k/a ReliaStar Life Insurance Company (the "ReliaStar policy"). Policy/Issue date: September 9, 2003. Face amount: $8,000,000. Expiry date: September 9, 2041. Described as a "Non-Participating Increasing Premium Term Insurance Policy to Age 95." *Exhibit 1*.

(2) Minnesota Life Insurance Company (the "MN Life policy"). Policy date: May 19, 2002. Face amount: $1,000,000. Described as a "Term Policy" with a term period of ten years with renewal privilege through May 18, 2041, and conversion privilege through May 18, 2011. *Exhibit 2*.

(3) Transamerica Occidental Life Insurance Company (the "Transamerica policy"). Issue date: April 13, 2002. Face amount: $1,000,000. Described as a "Term Insurance to the Policy Anniversary Nearest Age 95." *Exhibit 3*.

**3.** *Complaint*, ¶ 14–17.

**4.** Adam previously filed a Motion for Protective Order on February 3, 2009. The Court conducted a hearing on February 20, 2009 and issued an oral ruling denying his motion without prejudice as premature, since the Trustee had not propounded any formal discovery at that time.

**5.** Fed.R.Civ P. 26 is made applicable to bankruptcy adversary proceedings in Fed. R. Bankr.P. 7026. All references to "Rule ——" are to the Federal Rules of Civil Procedure.

**6.** *Motion*, p. 2.

**7.** The interrogatories request the following information, as summarized by the Court:

- identification of all physicians for the past five years (Interrogatory No. 10),
- height, weight, date of birth (Interrogatory No. 12),
- use of cigarettes, cigars, pipes or other tobacco within the last year (Interrogatory No. 13),

opposes the Trustee's use or disclosure of any of Adam's medical records contained in the Debtor's files.

Adam emphasizes he is not a debtor in this case. Rather, he is a creditor and former employee of the Debtor. He further argues he does not seek to prevent the Trustee from determining the value of the policies by using publicly available information and mortality tables.[8] Instead, Adam seeks to prevent the valuation through the use of his private, personal medical information. Adam contends he has a personal right to privacy in his medical records based on the United States Constitution, federal and state case law, the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), and Colorado statutes, including COLO.REV.STAT. § 13–90–107.[9] Adam believes the Trustee has adequate information to determine the value (if any) of the policies, including

- consumption of alcohol (Interrogatory No. 14),
- alcohol or substance abuse treatment (Interrogatory No. 15),
- identification of any heart disease or disorders (Interrogatory No. 16),
- identification of any neurological conditions (Interrogatory No. 17),
- use of prescription drugs and medications in the last five years (Interrogatory No. 18),
- identification of any types of cancers and date of diagnosis (Interrogatory No. 19),
- identification of any brain or nervous system disease (Interrogatory No. 20), and
- identification of any hospitalizations in the past five years (Interrogatory No. 21).

Exhibit 6, pp. 6–7.

Document Request No. 6 requests all documents concerning Adam's medical records for the years 2004 through 2008. *Exhibit 6*, p. 11.

8. COLO.REV.STAT. § 13–25–102, "Mortality table as evidence," provides:

In all civil actions, special proceedings, or other modes of litigation in courts of justice or before magistrates or other persons having power and authority to receive evidence, when it is necessary to establish the expectancy of continued life of any person from any period of such person's life, whether he is living at the time or not, the table set out in section 13–25–103 shall be received as evidence, together with other evidence as to health, constitution, habits, and occupation of such person of such expectancy.

The "mortality table" found at COLO.REV.STAT. § 13–25–103, determines "expectancy of life" based on "completed age."

Adam's sex, date of birth, statutory mortality tables, and the policies themselves.

Adam requests the following orders: (1) the Trustee shall not disseminate to any third party any of Adam's personal medical information, including but not limited to any such information found in the Debtor's files; and (2) Adam is not obligated to respond to the Trustee's discovery requests seeking Adam's personal medical information including Interrogatories Nos. 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21, Request for Production of Documents No. 6, and any other request impliedly seeking similar information.

**Trustee's Response**

The Trustee argues Adam's Motion attempts to preclude the Trustee from using or discovering *any* facts that bear directly on the value of the policies, thereby preventing the Trustee from discovering information to rebut Adam's defense that

9. COLO REV.STAT. § 13–90–107 provides, in relevant part:

(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases: ... (d) A physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

the policies have no value. The Trustee asserts the information sought is neither privileged nor protected by any privacy interest. He states there is no federal physician-patient privilege, and even if such a privilege exists under Colorado law, Adam has waived the privilege by raising the value issue in his affirmative defenses. The Trustee states he does not intend to publish any medical information to "strangers," but rather only to a limited number of entities, including approximately five insurance companies, to determine the value of the policies. The Trustee does not oppose a limited form of a protective order patterned after others used in federal courts under HIPAA, and apparently provided such a form order to Adam.[10]

**Testimony at Trial**

In response to questions about a "Client Application" and an attached release authorization form tendered to him by the Trustee [11] (described as a standard life insurance industry form), Adam testified he objected to completing the forms because he did not want to release certain medical information required for their completion.[12] It was his understanding execution of the release authorization would allow the Trustee to disclose his private information to more than 100 insurance companies and would further allow those insurance companies to disclose his information to additional third parties.[13] The Client Application, like the Trustee's interrogatories, seeks information regarding Adam's medi-

cal conditions and medications, and the identification of his doctors. Mr. Adam objected to these requests because the information is private to him, because he believes HIPPA is designed to protect the privacy of his medical records, and because he sees no reason to give up those rights.

Mr. Tom A. Ward ("Ward"), chairman of Legacy Capital Corporation, testified as an expert regarding certain topics within the "life settlement" industry.[14] Ward testified there are two driving factors in valuing insurance policies: (1) "premium to face"—determined as a percentage of the premium of the policy to the face value of the same; and (2) "life expectancy"—determined in number of months. In order to determine life expectancy, the last five years of medical records are necessary. According to Ward, there are five companies which value life insurance policies, three of which do most of the valuations. Ward stated all five follow a formula using a certified life underwriter, who analyzes premium to face and life expectancy figures. Ward opined the medical records would only be sent to the three or five companies he described, not the approximately 100 insurance companies referred to by Adam and listed in *Exhibit 5*.

Ward is familiar with the Colorado statutory mortality tables. While acknowledging the tables may statutorily estimate life expectancy, he testified they are not used for life settlement purposes. The tables are never used as a substitute for medical records, because they are too gen-

---

10. A form of such order was not tendered to the Court.

11. *Exhibit 5*.

12. The required disclosures included the provision of medical records for the previous five years, and the entering of a disclosure release valid until his death. *Exhibit 5*, pp. 1–3.

13. *Exhibit 5*, p. 4.

14. Adam objected to Mr. Ward being designated as an expert witness. The Court overruled the objection and allowed Mr. Ward to testify as an expert limited to the process of gathering the information necessary to do a valuation of a life insurance policy. Any testimony provided by Mr. Ward was afforded the appropriate evidentiary weight.

eralized. Additional information is necessary to complete a life insurance policy valuation because it is impossible to determine value based solely on mortality tables, as the potential buyers of the policies want more specific information. Factors such as the past five years of medical records, age of the insured, state of residency, cost of the coverage itself, and type of policy are relevant in determining the value of a life insurance policy in the life settlement industry.

## DISCUSSION

RULE 26 governs a party's duty to disclose, discovery, and protective orders, and provides in relevant part:

(c) Protective Orders. (1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

 (A) forbidding the disclosure or discovery;

 (B) specifying terms, including time and place, for the disclosure or discovery;

 (C) prescribing a discovery method other than the one selected by the party seeking discovery;

 (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

 (E) designating the persons who may be present while the discovery is conducted;

 (F) requiring that a deposition be sealed and opened only on court order;

 (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

 (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

(2) Ordering Discovery. If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

RULE 26(c).

This Court must determine whether the Plaintiff has established "good cause" to issue a protective order limiting or forbidding the disclosure or discovery of Adam's medical information and records. The Court makes this determination by weighing the claimed privacy interests of Adam against the Trustee's interest in obtaining information to assist in prosecuting of his Complaint and refuting the Defendant's affirmative defenses. The Court finds both Messrs. Adam and Ward to be credible witnesses and accepts their testimony as true. Additionally, counsel for both parties have provided the Court with substantial case law on the issues presented.

The Court finds the case of *In re Dillon*, 194 B.R. 533, 535 (Bankr.S.D.Fla.1996) to be instructive. In denying a trustee's request under RULE 35 to compel a debtor to undergo a physical examination to obtain a life insurance policy, the Florida Bankruptcy Court stated:

[Rule 35] requires that the movant seeking an examination demonstrate two necessary prerequisites. First, the physical condition of the party sought to be examined must be in actual controversy. Second, the movant must demonstrate good cause for the examination. "Good cause" in its turn, requires a demonstration of both relevance to the controversy, as well as need for the examination. Even when the movant has demonstrated good cause and the existence of a controversy, the Court still has discretion to determine whether or not to order an examination.

*In re Dillon,* 194 B.R. 533, 535 (Bankr. S.D.Fla.1996) (citations omitted). Two Federal District Courts in Colorado agree with this principle.[15] Similarly, the Third Circuit Court of Appeals has held:

> [W]e must engage in the delicate task of weighing competing interests. The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3rd Cir.1980).

The Trustee argues the medical records are discoverable because Adam has placed the issue of value into controversy in his affirmative defenses. The Court recognizes Adam's eighth affirmative defense states, "[t]he transfers are not voidable as Adam was a good faith transferee for value."[16] "Reasonably equivalent value" is certainly an element under § 548(a)(1)(B) and, if the transfers are recovered, the Trustee may be entitled to a judgment for the "value of such property" under § 550. A "good faith transferee that takes for value" may also have certain defenses under § 550(b).

However, this Court will not deem Adam's affirmative defense as a waiver of his privacy interest in his personal medical records. This is not a medical malpractice nor a personal injury lawsuit. The Debtor's actual medical condition is not at issue in this adversary proceeding and is not an element of any claim for relief nor asserted affirmative defenses. Rather, the Debtor's medical condition is only one factor the Trustee, or life settlement company, may use to determine the value of the term life insurance policies. Thus, the Trustee has failed to establish the medical information and records are in "actual controversy." Moreover, placing the issue of a policy's "value" into question is vastly different from placing one's underlying physical health at issue. Thus, the question of value does not give rise to a waiver of privacy under these circumstances.

█ Further, the Trustee has failed to demonstrate the relevance and need for such information outweigh Adam's right to privacy. Under the circumstances of this

---

**15.** *See E.E.O.C. v. The Vail Corp.,* 2008 WL 4489256 (D.Colo. October 2, 2008) (Under RULE 35 "(1) the plaintiff's mental or physical condition must be 'in controversy'; and (2) 'good cause' for the examination must exist.") and *Exum v. U.S. Olympic Committee,* 209 F.R.D. 201 (D.Colo.2002) (Under RULE 26(c),

"the 'good cause' determination requires the court to balance the party's need for the information against the injury which might result from unrestricted disclosure.").

**16.** *Answer,* p. 6, ¶ 8.

case, the Court agrees with Adam that the duty of the Trustee to collect and preserve potential assets of the estate does not trump a non-debtor's right to privacy in his medical records and health information.

Accordingly, the Court finds good cause exists under RULE 26(c)(1) to issue a protective order forbidding the discovery and disclosure of Adams's personal medical records. The order will protect Adam from annoyance, embarrassment, oppression, or undue burden or expense under RULE 26, will preserve his rights under state law and federal HIPPA laws, will be consistent with case law, and will take into account the fact that Adam is not a debtor in this bankruptcy case.

The Trustee may use the information in the remaining discovery requests not objected to by Adam, including Adam's sex, date of birth, state of residency, and information contained in the policies themselves.[17] With these facts and the mortality tables, the Trustee should be able to determine a value for the policies for the purposes of this litigation. Although this limited information may not be ideal to one in the life settlement industry, it balances the rights and duties of the Trustee with the privacy rights of Adam.

### CONCLUSION

Based upon the above findings and conclusions,

IT IS ORDERED the Motion for Protective Order Re: Written Discovery of Medical Information filed by the Defendant is GRANTED.

IT IS FURTHER ORDERED, except as authorized by this Order, the Trustee shall not disseminate to any third party any personal medical information of George F. Adam, Jr., including but not

17. *Exhibits* 1, 2, and 3.

limited to any such information found in the Debtor's files; and

IT IS FURTHER ORDERED George F. Adam, Jr. is not obligated to respond to Trustee's discovery requests seeking Mr. Adam's personal medical information including Interrogatories Nos. 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21, Request for Production of Documents No. 6, and any other request impliedly seeking similar information.